**180**

RTC MORTGAGE TRUST
1995–S/N1, Plaintiff,

v.

POLMAR REALTY, INC., Rudian Operating Corp., 303–309 10th Avenue Corp., 211 Management Corp., Maringof Garage, Inc., Inwood Management Corp., Freshstart Venture Capital Corp., People of the State of New York, City of the State of New York, City of New York Environmental Control Board, Tibor Schonfeld, Manya Schonfeld, Mark Schonfeld, Alan Schonfeld, United States of America, New York City Department of Finance, Isaak Gutman, Alex Gofman, New York State Department of Labor, Unemployment Insurance Division, Industrial Commissioner, "John Doe One" Through "John Doe One Hundred" the last one hundred names being fictitious and intended to designate the tenants or occupants of the premises in the foreclosure action, Defendants.

91 Civ. 6685 (SAS).

United States District Court, S.D. New York.

Nov. 22, 1996.

Peter C. Moskowitz, Golenbock, Eiseman, Assor & Bell, New York City, for RTC Mortgage Trust 1995–S/N1.

Joel S. Stern, Stern, Wiener & Levy, L.L.P., New York City, for Martin Tener, Receiver.

Douglas M. Lieberman, Markotsis & Lieberman, Hicksville, for Henry Kliot.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

Martin Tener ("Tener" or "Receiver"), as receiver of the subject premises located at 303–309 Tenth Avenue (the "Premises"), has moved this Court to compel Henry Kliot ("Kliot"), a subtenant and sublessor of a portion of the Premises, to turn over rents received during the period May 1992 through April 1996. For the reasons set forth below, Receiver's application for attornment is denied in its entirety.

### I. *Factual Background*

In 1991, an action was brought to foreclose a consolidated mortgage in the principal sum of $3,950,000, secured by five properties, one of which is the property located at 303–309 Tenth Avenue, New York, New York. Affidavit of Martin Tener, Receiver of Rents and

Profits in the Consolidated Mortgage Foreclosure Action, ("Tener Aff."), ¶¶ 1–2. This property is currently owned by 303–309 10th Avenue Corp ("10th Avenue Corp."), *id.* at ¶ 2, one of the mortgagors in the consolidated foreclosure action.

The following brief chronology is set forth in order to better understand the lattice of leases and subleases entered into with regard to the Premises. On March 1, 1992, 303–309 10th Avenue Corp. ("10th Avenue Corp.), of which Alex Gofman ("Gofman") is President, leased the entire premises to Slamar Operating Corp. ("Slamar") at a monthly rental of $3,000. Affidavit of Joel S. Stern, Receiver's attorney, ¶ 8(b). On that same day, Slamar subleased the entire premises to 10th Avenue Service Center, Inc. ("10th Avenue Inc."). *Id.* at ¶ 8(c). Jacob Gutman ("Gutman") is President of 10th Avenue Inc. *Id.* According to Gutman, who testified at an evidentiary hearing, the monthly rental paid by 10th Avenue Inc. to Slamar was $5,000. Transcript of Hearing, October 8, 1996 ("Tr."), p. 8. On April 25, 1992, 10th Avenue Inc. sublet the gas pump portion of the Premises [1] to Kliot at a monthly rental of $2,500. Tener Aff. at ¶ 8(e); Tr. at 9. One month later, on May 25, 1992, Kliot subleased the gas pump portion of the premises to 3902 Church Gas Station, Inc. ("3902 Church") at a monthly rental of $4,000 per month, plus $500 per month for electrical use. Stern Aff. at ¶ 8(j).

There appears to be some dispute regarding the rental payments relating to the sublease between 10th Avenue Inc. and Kliot. Kliot alleges that from April 1992 through December 1995 he paid all but two of the monthly rental payments directly to his sublessor (Gutman). Affidavit of Henry Kliot ("Kliot Aff."), ¶¶ 4–5. To substantiate this claim, Kliot provided copies of a number of checks made payable to "J. Gutman" throughout the period September 1993 through November 1995. Kliot Aff., Exh. C. Gutman, however, testified that he only received two payments from Kliot, for August and September of 1992, for which he issued two receipts, and that he never received or endorsed any of the above-mentioned checks.

Tr. at 8. According to Gutman, except for these two payments, Kliot paid his rent directly to Alex Gofman. Tr. at 10. Gutman further testified that he had many arguments with Kliot regarding the non-payment of rent but did not pursue legal recourse because Gofman, president of 10th Avenue Corp. (owner of the Premises), threatened him with eviction whenever he made such demands. Tr. at 10, 15.

Martin Tener qualified as Receiver of the Premises on May 6, 1992. Tener Aff. at ¶ 6. Shortly thereafter, on May 13, 1992, Tener personally served the first Notice to Attorn on various tenants demanding that all rental payments be made to him. Tr. at 22; Tener Aff., Exh. H. Regarding the Premises, Tener testified as follows:

Q: Could you describe what you did, where you went?

A: I went to the premises [303–309 10th Avenue] and there was a gentleman outside by the gas pumps. I asked him if he was running the place, and he said no, and he pointed me inside, told me to go inside, and I believe I met Mr. Gutman in there and I served him the papers.

Tr. at 23. Despite receiving this notice, Gutman testified that he never had any discussions with Kliot regarding the Receiver. Tr. at 21. Tener further testified that, in May of 1993, he served two copies of a second Notice as there were two sets of cash registers on the Premises. Tr. at 23. One notice was served upon people standing outside near the gas pumps while the second notice was served upon a person inside the repair shop. *Id.*

II. *Discussion*

■ Kliot contends that he cannot be compelled to turn over the monies he collected from 3902 Church as he has not been the tenant-in-possession since May of 1992. In support of this proposition, Kliot cites a single case, *Lincoln Savings Bank of Brooklyn v. Cluster Holding Corp.*, 187 Misc.2d 70, 187 N.Y.S.2d 38 (Sup.Ct. Bronx Co. 1959). Tener, however, argues that Kliot was in posses-

---

1. Jacob Gutman retained use of the repair shop portion of the Premises, tr. at 9, for which he paid rent of $5,000 per month to Slamar until November 1995. *Id.*

sion at the time the first Notice to Attorn was served.[2] Because Kliot was the tenant-in-possession until May 25, 1992 and because the first Notice to Attorn was served on May 13, 1992, the sole issue to be decided is whether Tener served notice upon Kliot in a manner sufficient to warrant an order compelling Kliot to attorn.

In support of a strict service requirement, Kliot argues that Rule 5 of the Federal Rules of Civil Procedure governs service of a Notice to Attorn. This conclusion is reached by assuming that Kliot is a "party" and that a Notice to Attorn is a "paper" in an action. Given these assumptions, service would have to be accomplished by delivering a copy to the party or by mailing a copy to the party's last known address. Fed.R.Civ.P. 5(b). It is apparent that Tener did not serve Kliot in accordance with this Rule.

Tener, on the other hand, states that service of a Notice to Attorn is not governed by any particular New York statute. According to Tener, the most analogous provision can be found in Section 228 of the New York Real Property Law which governs termination of tenancies at will or by sufferance. That section provides that service can be made by delivering a copy of the notice to a person of suitable age and discretion residing upon the premises. N.Y.Real Prop.Law § 228 (McKinney 1989). Tener cites *Pepsi–Cola Metropolitan Bottling Co. v. Miller*, 50 Misc.2d 40, 269 N.Y.S.2d 471 (Civ.Ct. Bronx Co. 1966), as an example of the more lenient service requirements applicable to real property holdover proceedings. In *Pepsi–Cola*, notice of termination was served upon a corporate tenant by delivering a copy to a person upon the premises who "appeared to be in charge." 269 N.Y.S.2d at 473. In addition, the person served said, at the time of service, " 'Give me the paper, I will take care of it.' " *Id.* It was later determined that an officer of the corporation did in fact receive the notice. *Id.*

Assuming, *arguendo*, that the more lenient service requirements espoused by Tener do apply to service of attornment notices, it cannot be said that Gutman, with respect to Kliot, was a person of suitable age and discretion.[3] At the time the first Notice to Attorn was served, Gutman did not give any indication whatsoever that he was acting in a representative capacity. In fact, he testified that he never had any discussions with Kliot regarding the presence of a receiver.[4] Tener, however, had ample opportunity to inquire, from both the person at the gas pumps and Gutman, whether there were any other sub-tenants, which was reasonably likely given the commercial nature of the premises and the existence of another sublease.

 There is further support to the proposition that service upon Gutman cannot be deemed effective as to Kliot. Cases dealing with attornment generally state that a receiver must first make a demand upon the tenants and subtenants before he is entitled to collect their rents. *See, e.g., Eastern Savings Bank v. Epco Newport News Associates*, 14 B.R. 990, 996 (Bankr.S.D.N.Y.1981) (failure to make demand precludes a receiver from collecting rents directly from subtenants); *Resolution Trust Corp. v. 53 West 72nd Street Realty Assocs.*, No. 91 Civ. 3299, 1991 WL 156260 (S.D.N.Y. Aug. 6, 1991) (receiver served sub-tenants with a notice to attorn demanding that rents be paid to him). Without a showing of some sort of principal-

---

**2.** Tener does not argue that Kliot was a tenant-in-possession at the time the second Notice was served as the gas pump portion of the Premises had already been subleased from Kliot to 3902 Church.

**3.** Moreover, even under the Real Property Law, it has been held that each tenant, sub-tenant and squatter is entitled to a thirty-day notice of termination. *See Paolucci v. Lucas*, 71 N.Y.S.2d 839 (1947).

**4.** Tener implies that because Kliot paid rent directly to Gofman he must have had actual knowl-

edge of the Notice to Attorn. There is no logic to this argument. There are many reasons why Kliot might have paid rent to the owner rather than to Gutman. This Court cannot speculate that Kliot did so because he knew of the appointment of a receiver. In short, Tener has not proved that Kliot had actual knowledge of the Notice to Attorn. *Cf. Harris Investing Corp. v. Sil–Gold Corp.*, 38 Misc.2d 549, 237 N.Y.S.2d 210, 213–14 (Sup.Ct. Queens Co. 1962) (defendant punished for contempt of an order requiring him to turn over rents where actual knowledge of said order was presumed from the fact that defendant took an appeal therefrom).

agent or fiduciary relationship, demand upon Kliot cannot be imputed from the demand duly made upon Gutman. Accordingly, Kliot was not properly served with the first Notice of Attornment and, therefore, cannot be compelled to attorn to Tener.[5]

### III. *Conclusion*

Receiver's motion for an order compelling Kliot to attorn is hereby denied in its entirety for the reasons stated above.

SO ORDERED.

---

**5.** Tener may, however, have a remedy in an independent action in which fraud or other illegal conduct may be established. *See, e.g., Lincoln Savings Bank,* 187 N.Y.S.2d at 41. In this regard, Tener should note that courts have "broad power" to prevent frustration of receivership through collusive or fraudulent conduct. *New York City Community Preservation Corp. v. Michelin Assocs.,* 115 A.D.2d 715, 717, 496 N.Y.S.2d 530, 533 (2d Dep't 1985) (citation omitted).